NEW-YORK,
Nov. 1810.

GENET
v.
MITCHELL.

<hr/>

## GENET *against* MITCHELL.

In an action for a *libel*, the plaintiff, at the trial, may abandon any part of the libellous matter in any one count in his declaration, and the part so abandoned may be used in connexion with the part retained, to show its meaning, and he will be entitled to recover, if the part retained be sufficient to sustain an action.

Where the libel charged the plaintiff, who had been a minister of *France* to the United States, with having "traitorously betrayed the secrets of his government," and the proof was, that he had published his instructions; it was held, that a public minister may, if he deems it necessary, publish his instructions; and whether, by such publication, he had *traitorously* made known the secrets of his government, is a mixed question, on which a jury, in this action, under the advice of the court, are to decide.

THIS was an action for a *libel*. The declaration contained three counts. The second count was abandoned at the trial. The first count charged the defendant with publishing, on the 26th *March*, 1807, in a newspaper called "*Republican Crisis*," at *Troy*, in the county of *Rensselaer*, a "false, scandalous, and malicious *libel*, of and concerning the plaintiff," which (omitting the innuendoes and averments) was as follows:

"*Genet* is on the alert in *Rensselaer*. He is determined to put down his enemies, and make them bite the dust. He intends his committee of vigilance shall cover themselves with glory. Thus he will deserve well of the faction, receive the due consideration of the first consul, and be made one of the legion of honour."—"It is said, that the *French* government have a spy in every nation on earth, who, by giving information of the

strength, measures and movements of those govern-
ments, and thus aid the emperor in his numerous subju-
gations and conquests. If this be the case, who is the
spy?"

The third count charged the defendant with publish-
ing a libel in the same paper, on the 16th *March*, 1807,
in the following words : " This charge is the offspring
of some *French* jacobin, who, with the versatility pecu-
liar to his cast, has, perhaps, converted himself into an
emissary of *Bonaparte*. The county of *Rensselaer*, I am
told, does harbour such a one, who, on a former occa-
sion, strived to sow sedition among us, lighted a flame
which required all the energies of our *Washington* to
extinguish; and to prevent its scorching his own skirts,
traitorously betrayed the secrets of his own govern-
ment. Our countrymen would do well to be on their
guard against such incendiaries ;" meaning, &c.

The defendant pleaded the general issue, with notice
of special matter to be given in evidence, by way of jus-
tification.

At the trial, the defendant was admitted to be the
editor and publisher of the paper containing the alleged
libel. A witness testified, that the words " *Genet*," and
" *French* emissary," in the first paragraph, meant the
plaintiff; and that he understood the charge " spy," in
the other paragraph, taken in connection with the pre-
ceding article, applied to the plaintiff; but if the paragraph
containing the word " spy" was not taken in connection
with the preceding article, he should not know who
to apply it to; that he understood that " *Bonaparte*"
meant the emperor of *France*; that he understood the
words " *French* jacobin" to mean the plaintiff; and that
his understanding of the application of these words, in
the alleged libel, to the plaintiff, was founded principally
on matters of public notoriety, which he had heard, as to

NEW-YORK,
Nov. 1810.

GENET
v.
MITCHELL.

the plaintiff's conduct and proceedings, while he was the *French* minister near the *United States.*

It was admitted, that the plaintiff was minister of the *French* republic, as stated in the declaration; and the defendant, in order to make out his justification, set forth in the notice subjoined to his plea, in relation to the seditious conduct of the plaintiff, while he was minister of *France*, offered to read in evidence the deposition of *Thomas Jefferson*, and a pamphlet containing the correspondence between the plaintiff, while *French* minister, and Mr. *Jefferson*, then secretary of the *United States*, the plaintiff's attorney having consented that the pamphlet should be entitled to the same credit, as the original letters which passed between the plaintiff and Mr. *Jefferson.*

It was objected to the admission of this evidence, that the defendant's notice did not state, with sufficient precision, the seditious acts, &c. on which the defendant meant to rely. The plaintiff's counsel, after some discussion, stated to the judge, that they abandoned all the libellous matter set forth in the declaration, except the second paragraph in the first count, which, it was alleged, charged the plaintiff with being a " *spy*" of *Bonaparte*, and, excepting the charge in the last count, that the plaintiff had traitorously betrayed the secrets of his own government. It was then submitted, on the part of the defendant, whether such an abandonment could be made by the plaintiff; and the judge being of opinion that it might be done, the plaintiff's counsel declared that he abandoned all the libellous matter, except as above mentioned; upon which the evidence offered by the defendant, as to the other matters, was held irrelevant.

The defendant, by consent of the plaintiff's counsel, read in evidence, a letter from the plaintiff to Mr. *Jefferson*, accompanying the plaintiff's instructions, &c. as *French* minister, contained in a printed pamphlet, an-

nouncing the publication of those instructions by the plaintiff, in such printed pamphlet.

It was admitted, that the plaintiff was recalled and superseded, as *French* minister, at the request of the President of the *United States*, in the commencement of the year 1793; and that the plaintiff, in *December*, 1793, published his instructions.

The plaintiff also gave in evidence two decrees, dated at *Paris*, 7th *Fructidor*, 7th year of the *French* republic, showing that his name had been erased from the list of emigrants, and his property, which had been sequestered, ordered to be restored, and by which he was enjoined to return to *France*, within three months after notice of those decrees.

The defendant's counsel contended, that the charge of spy, as stated in the declaration, was not warranted by the supposed libel, nor were the innuendoes and averments proved; and that the remaining supposed libellous matter relied upon by the plaintiff, was fully justified. The judge charged the jury, that in his opinion, the plaintiff was entitled to recover on the first point; and as to the second point, he thought the defendant had made out a strong defence, but he left it to the jury, on the evidence before them, to find such verdict as they should deem just. The jury found a verdict for the plaintiff for 200 dollars damages.

A motion was made to set aside the verdict, and for a new trial.

*Sudam* and *Van Vechten*, for the defendant. The plaintiff, at the trial, abandoned the whole of the publication charged as libellous, in the first and second counts, except the second paragraph of the first count, and rested himself on the abstract term " spy." The word occurs in a distinct paragraph. It is an important

question, whether the plaintiff can, after stating a variety of facts, in his declaration, as libellous, and the defendant comes prepared to meet the whole charge, be permitted to separate the facts, and rely on one distinct fact, as libellous, when there might be a clear and complete justification of the whole, taken together. If the other paragraphs are struck out, the charge of *spy* is clearly not libellous. Where two countries are in a state of amity and peace with each other, to charge a citizen of one, with being a *spy* in the other, is not libellous.

There are no averments, in the declaration, to help out the charge, or to show it libellous. There is nothing in the libel, that will apply the words to the plaintiff. It is too vague, and uncertain, to admit of a particular application. There must be a *colloquium*, as to extrinsic matter, to show the necessary inference, or application, as to the plaintiff.*

* *Cowp.* 688. 1 *Johns. Rep.* 286. 5 *Johns. Rep.* 211. *Chitty's Pl.* 382, 383. 8 *East,* 431. *Cro. Eliz.* 497. 5 *State Tr.* 590. 4 *Co.* 20. 9 *East,* 95.

The extraneous matter, in the present case, is in the first paragraph. The plaintiff having entered a *nolle prosequi*, as to the second count, and the first paragraph of the first count, it operates as a complete extinguishment of the matter so abandoned. The case stands, as if the paragraphs, so relinquished, were erased from the record. Having abandoned the first paragraph, without any qualification, or reservation, it must be entirely rejected. Then the second paragraph stands alone, without any thing from which it can possibly be inferred that the plaintiff was intended. Admitting that the plaintiff may abandon any count, or part of it, he cannot, afterwards, resort to the part abandoned, to explain the residue.

If the plaintiff meant to make use of the first paragraph to explain the second, he should have retained it, with a *colloquium*, or proper averments; but he has totally and absolutely abandoned it; and he cannot now retain it, for any purpose whatever. No principle is better, or

more clearly settled, than when the language of a libel is too uncertain, to admit of any application to the plaintiff, without the aid of extrinsic matter, such extrinsic matter must be introduced with proper averments.

If the *innuendo* could have been proved, it has not, in fact, been proved. There is no averment, that *Bonaparte* was at war with the *United States*, or that he meditated their subjection, how then could the plaintiff be permitted to prove that fact; and without it, the charge of being a *spy*, &c. could not be libellous. A material *innuendo* or *averment* cannot be rejected.

Then, as to the second libel, stated in the third count, the defendant made out a complete justification, from the printed papers, furnished by the defendant, and lodged in the office of the secretary of state. It is admitted, that instructions to ministers are secret; that the plaintiff's instructions were so; and it was proved, that he published those instructions; that he wilfully and treacherously betrayed the secrets of his government.

A minister has no discretion to publish the secret instructions of his government. They are never made public, without the authority, or permission of his government.

Again, the jury were misdirected. If the matter, abandoned by the plaintiff, was rejected, he could not be entitled to recover on the first count.

It is a question of law, whether the instructions of ministers are secret, and can be published, without betraying the secrets of government. The judge should have decided the law, on this subject, and not have left it to the jury. If the plaintiff was entitled to recover at all, on the first count, on the charge of being a spy, it could only be as for a term of reproach and odium, and the jury should have been so instructed, as the damages would, in that case, have been much less.

NEW-YORK,
Nov. 1810.

GENET
v.
MITCHELL.

* 1 Saund. 207.
note 2.

† 9 East, 93.
Roberts v. Cam-
den.

‡ Wicq. Amb.
165. 168.

§ Rob. Dict.
Univ. vol. 22. p.
387. 590.

*Foot* and *Russell,* contra. It is well settled, that the plaintiff may, at *nisi prius,* relinquish any one count in his declaration, or any part of a count.* The plaintiff abandoned the first paragraph of the first count, merely as *libellous* matter; and there is no reason why he may not use it, afterwards, with the other paragraph, to show its meaning. The plaintiff is not bound to prove the whole of an *innuendo.* What is not necessary to support the action, may be rejected, as surplusage.† It is sufficient, if enough is shown to entitle the plaintiff to recover.

Though the defendant is not charged with being such a spy as by the law of nations would subject him to the punishment of death; yet the character of a *spy* is imputed to him, in an odious and injurious sense. Any charge, in writing, which tends to injure the reputation of the plaintiff, and degrade him in public estimation, is libellous. It is admitted, that this was a question of law for the judge to decide; and he did decide it. His charge was in favour of the plaintiff, on the first count, and in favour of the defendant, on the third count; and he finally left the whole matter to the jury. The defendant has, then, no reason to complain of the charge of the judge.

The libellous matter in the third count was fully proved. Did the defendant make out a justification? Did he prove that the plaintiff had *traitorously* published the secrets of his government? Admitting that his instructions were secret, he had a right to publish them whenever he thought it necessary. He could not be compelled to do it; but he might exercise his discretion as to publication.‡ *Wicquefort* states, that ambassadors have the power to publish their instructions, whenever they judge it necessary, for the interest of their government. And the same doctrine is laid down by *Robinct,* in his *Universal Dictionary.*§ Various instances are given by *Wicquefort,* of ministers having published their instructions; and we have frequent examples of

such publications, in modern times. Mr. *Wickham*, the English minister, in *Switzerland*, published his instructions, to contradict the suggestion that he was employed against the *French* republic. The same thing was done by Mr. *Drake*, in *Bavaria*, to repel the charge of the French government. M. *Ternant*, the predecessor of Mr. *Genet*, offered to Mr. *Jefferson*, to file his instructions in the office of the secretary of state, to refute the charge, that he was directed by his government, to do every thing in his power to check the commercial prosperity of the *United States*. Mr. *Munroe*, after his return from *France*, published his instructions, in vindication of his own conduct and reputation. Mr. *Genet* had a right to publish his instructions, to vindicate himself from a charge, that he had betrayed the secrets of his own government. If, then, a minister has a right to use his discretion, in that respect, this court cannot decide on the question, as to the abuse of that discretion. It is a matter altogether between him and his own government. The judge very properly left it to the jury, as a matter of fact, whether the plaintiff had *treacherously* disclosed his instructions, or betrayed the secrets of his government.

YATES, J. A new trial was moved for, on the following grounds:

1. That the first libel set forth in the declaration is not supported by proof.

2. That the libel stated in the other count was justified.

3. That the jury were misdirected by the judge.

This cause was tried under the qualified abandonment, as stated; to which, objections have been raised in the argument. I consider the doctrine laid down in 1 *Saund.* 207. *n.* 2. as the law on the subject, and that the exception is incorrectly taken. The course adopted by the plaintiff was proper; and it was compe-

NEW-YORK,
Nov 1810.

GENET
v.
MITCHELL.

tent to him to abandon part of the libellous matter, in any one count, provided the part relied on contained sufficient to sustain the action; and as evidence of this, the judge correctly admitted the whole publication containing the libellous matter.

I do not think the case requires a very minute or extensive examination of the rules of pleading or of evidence, applicable to an action for a libel. These are so fully laid down in the books, and particularly in the famous case of *The King* v. *Horne*, in *Cowper*, recently recognised by this court, in the case of *Van Vechten* v. *Hopkins*, as to render a repetition of the law on the subject unnecessary. I shall confine myself to an application of some of the principles thus established, to the facts disclosed in this cause.

It cannot seriously be contended, that the words relied on in the first and third counts, in themselves, are not sufficiently explicit to be well understood; and that on account of their vagueness and uncertainty, they are not actionable.

The allusion to the plaintiff, in the first part of the publication stated in the first count, is evident, and does not leave a doubt that he was the person intended; yet as it might possibly require an explanation, the testimony adduced gives such explanation, and wholly removes the ambiguity, if any can be supposed to exist; nor is this paragraph susceptible of a construction different from the one given to it by the witness; that by *Genet*, the *French* emissary, was intended the plaintiff in this cause; that the charge of *spy*, in the next paragraph, if taken in connection with the preceding article, must be applied to the plaintiff, and that *Bonaparte* meant the *emperor* of *France*.

The paragraph containing the charge of spy, immediately follows the animadversions on the plaintiff's conduct; and from the manner in which it is introduced, no room is left to doubt that this charge was intended to apply to

him. It is in vain to say that this might be deemed a separate or distinct paragraph, disconnected with the former part of the publication. It must and will irresistibly be taken in connection, and the meaning and true construction necessarily follows, which manifestly charges the plaintiff with being a *spy* of the *French* government; giving information of the strength, measures, and movements of the government of the *United States*, to aid the emperor of the *French* in subjugating them; and, consequently, representing the plaintiff in an odious, if not in a criminal point of view; and, according to the rules of law, libellous in either case. The objection, therefore, to the insufficiency of the proof, as to the first libel set forth in the declaration, cannot be sustained.

I shall now proceed to an examination of the alleged justification of the libellous matter relied on in the 3d count; *that the plaintiff had traitorously betrayed the secrets of his own government.* To justify this charge the defendant proved, that the plaintiff had published his instructions as minister, and that his name had been on the list of proscribed emigrants.

It could not be pretended, nor was it attempted, that the plaintiff had not incurred the displeasure of the executive directory of *France*, and had been proscribed. The cause of this proscription does not appear. That its existence, at the period stated, ought to be deemed conclusive evidence of the alleged treachery to his government, I cannot admit. The plaintiff might have published his instructions, without being subjected to such a charge. It might have been done by him to repel improper accusations, or in exercise of a sound discretion, given him by the power he represented, and not unfrequently extended to persons holding the important office he held under that government. Nor is it unreasonable to infer, that this discretion, in some measure, existed, as the instructions stated that the abandonment of this cautious or (as translated by some) secret policy, depended on

NEW-YORK,
Nov. 1810.

GENET
MITCHELL.

future occurrences; and was to be pursued or not, according to the plaintiff's own judgment. The proceeding of the executive directory, subsequent to the publication of those instructions, do not prove treachery in the plaintiff. It is a fact, too well attested, that many innocent persons have fallen victims to the measures of that extraordinary tribunal. How far the publication of those instructions operated as treachery to his own government, the jury were to decide; and it was properly submitted to them by the judge, with his opinion, that a strong defence had been made out; giving to the defendant a full opportunity to receive the effect of his justification, which the jury, no doubt, have considered, and their verdict ought not now to be disturbed. A new trial must, consequently, be refused.

THOMPSON, J. and VAN NESS, J. were of the same opinion.

KENT, Ch. J. I am also of the same opinion. I will only add, on the second point, that whether the defendant had made out a justification of the charge that the plaintiff had *traitorously* made public his instructions, was a mixed question properly submitted to the jury, under the advice of the court. The fact cannot be said to be, *per se*, traitorous. These instructions are understood to be confidential and secret; but it does not follow, that they are to remain so in every possible case. The fitness or the fraud of the disclosure will depend upon the motive and the circumstances attending the publication. This seems to be the better opinion of the writers cited by the counsel for the plaintiff, and who treat particularly upon this branch of the diplomatic duties. *Wicquefort* (*L'Ambassadeur*, tom. 1. s. 14.) says, that the ambassador is not obliged to show his instructions to the foreign court; and he even maintains, that he ought not to show them, without necessity, and without an express order. If necessity forms an exception to the general

rule, the ambassador must be left to judge of its force; and no prudent minister would readily yield to it without strong reasons, sufficient to procure the approbation of his sovereign. In the *Dictionnaire Universel* of *Robinct*, (*tom.* 22. tit. *Instruction*, s. 3.) it is stated, that sometimes the ambassador shows his instructions, without order; but this, as it is there observed, ought to be the work of reason and of choice, and for some justifiable end. *Martens*, in his *Summary of the Law of Nations*, (p. 217.) is equally explicit. He says, that the instructions to the minister are not usually produced to the court where he is sent, unless his own court orders him to do it, or unless he, from urgent motives, thinks himself justifiable in communicating certain passages of them; and that *Les Memoires du Comte d'Avaux* furnish a number of examples of such communications, and the matter is left to the discretion of the minister. *Wicquefort* refers to a number of specimens of these state papers, which had been made public, probably, after the negotiations had terminated; and it ought to be observed, in the present case, that when the plaintiff published his letter of instructions, his functions, as minister, had terminated, or were about to cease. The criminality or innocence of the act will, then, depend altogether upon the intent with which it was done. This is one of those cases in which we may apply the maxim, that *actus non facit reum nisi mens sit rea*. The more natural inference from the facts before us, is, that the plaintiff published his instructions without any criminal views, and merely to vindicate his official conduct. His object was to prove his fidelity in his trust, and not to betray the essential interests of his government. I think the jury were warranted in drawing this conclusion. The act may have been ill advised or injudicious, without being chargeable with perfidious motives. Nor does it appear, that the *French* government ever considered this act of the plaintiff as ground for any specific charge or complaint.

NEW-YORK,
Nov. 1810.

GENET
v.
MITCHELL.

NEW-YORK,
Nov. 1810.

SPENCER, J. not having heard the argument in the cause, declined giving an opinion.

